IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MSCI 2006-IQ11 LOGAN BOULEVARD LIMITED PARTNERSHIP *a Delaware limited partnership*, | : : : : : | Case No. 4:16-CV-2090 |
| Plaintiff, | : : | (Judge Brann) |
| v. | : : | |
| GREATER LEWISTOWN SHOPPING PLAZA, L.P., *a Pennsylvania limited partnership*, | : : : : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**FEBRUARY 6, 2017**

## I. BACKGROUND

On October 17, 2016, Plaintiff, MSCI 2006-IQ11 Logan Boulevard Limited Partnership, a Delaware limited partnership, hereinafter "MSCI" or "lender" filed commercial mortgage foreclosure action against Defendant, Greater Lewistown Shopping Plaza, L.P., a Pennsylvania limited partnership, hereinafter "Lewistown Shopping Plaza" or "borrower." Plaintiff subsequently filed a Motion to Appoint a Receiver[1] on November 16, 2016 requesting the appointment of a receiver to

---

[1] ECF No. 5.

1

operate and manage the mortgaged property of borrower as it has been in default on the $10,500,000 mortgage since March 2016.

On November 18, 2016, the Court granted the motion in part and denied it in part for two reasons. First, and most importantly, because the motion was, at that juncture, filed *ex parte*. The Court preferred that the Defendant be provided the opportunity to be heard, as receivership is an extreme pre-trial remedy. Second, Plaintiff's first motion only cited to clauses in the mortgage that permitted collection of rent and income; it did not cite to portions of the mortgage that also provided for a receiver to operate and manage the mortgaged property.

My consideration of the renewed receivership motion today is in a different vein. As of the date of this Order, Defendant has had an opportunity to respond and brief its opposition to the motion. Moreover, Plaintiff has further cited to portions of the mortgage that would also allow not only for the collection of rents, but also for the operation and management of the subject property by the receiver.

"No hearing is necessary where the facts support the appointment of a receiver,"[2] and I find here that they do. Accordingly, and for the reasons that follow, the motion will be granted in full.

---

[2] *United States v. Berk & Berk*, 767 F. Supp. 593, 597 (D.N.J. 1991).

## II. DISCUSSION

Lewistown Shopping Plaza does not dispute that it defaulted on the balance of its mortgage at maturity. Instead, it merely argues that "Defendant made diligent efforts to refinance the balance due and owing under the Loan Documents upon maturity, because of changes in the lending market, Defendant was unable to close on new financing prior to maturity."[3]

Rule 66 of the Federal Rules of Civil Procedure provides the authority for federal courts to appoint receivers. Both parties agree that the proper analysis is that employed by the late Honorable Joseph E. Irenas, writing for the District of New Jersey, as follows:

> In diversity suits, federal law governs the issue of whether a receiver should be appointed. *Maxwell v. Enterprise Wall Paper Mfg. Co.*, 131 F.2d 400, 402 (3d Cir.1942) ("What form of equitable relief a plaintiff is to be given by a federal court for infringement of his rights, we have held to be a matter to be determined by federal law, not state decisions.").
>
> Wells Fargo seeks an order appointing a receiver who will collect all rents and income, as well as operate and manage the property.
>
> When considering whether to appoint a receiver in the context of a mortgage foreclosure, the following factors guide the Court in its exercise of discretion: "the property is inadequate security for the loan; the mortgage contract contains a clause granting the mortgagee the right to a receiver; the continued default of the mortgagor; the probability that foreclosure will be delayed in the future; the unstable

---

[3] ECF No. 14 at 4.

financial status of the mortgagor; [and] the misuse of project funds by the mortgagor." *United States v. Berk & Berk*, 767 F.Supp. 593, 597 (D.N.J.1991)22; s*ee generally Canada Life Assurance Co. v. Alfred R. LaPeter*, 563 F.3d 837, 845 (9th Cir.2009) ("the district court has broad discretion in appointing a receiver, ... it may consider a host of relevant factors, ... no one factor is dispositive.").

When the moving party seeks a receiver who will not only collect rents and profits, but will also manage and operate the mortgaged property pending foreclosure, federal courts are particularly cautious in appointing a receiver, and therefore consider whether the evidence demonstrates " 'something more' " than just " 'the doubtful financial standing' " of the defendant and the " 'inadequacy of the security.' " *Canada Life Assurance Co*., 563 F.3d at 845 (internal citation omitted); *The Chase Manhattan Bank, N.A. v. Turabo Shopping Center, Inc*., 683 F.2d 25, 26 (1st Cir.1982) (internal citation omitted).

The additional factors warranting appointment of a receiver to manage the property may include: "the danger of waste[;] delays in foreclosure," *Canada Life Assurance Co*., 563 F.3d at 845 (internal citation and quotation omitted); the defendant's "fraudulent conduct"; "imminent danger that property [will] be lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and the plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property." *Turabo Shopping Center, Inc*., 683 F.2d at 26–27 (internal citation and quotation omitted); *accord Consolidated Rail Corp. v. Fore River Railway Co*., 861 F.2d 322, 326 (1st Cir.1988).

In considering the relevant factors, the Court concludes that Wells Fargo is entitled to the relief it seeks.

First, Article 11.02(d) of the Loan Agreement specifically provides that after an "Event of Default", Wells Fargo may apply for the appointment of a receiver to manage and operate the property, and

that CCC Atlantic "consents, to the extent permitted by applicable law, to the appointment of a receiver." (Compl. Ex. A).

Additionally, the Assignment of Lease and Rents, executed along with the Loan Agreement (Compl. Ex. E, Assignment of Leases and Rents), gives Wells Fargo the right to all rents upon an Event of Default. In the Assignment of Leases and Rents, CCC Atlantic "irrevocably, absolutely and unconditionally" assigned to Capmark (Wells Fargo's predecessor in interest) "all of [its] right, title and interest in and to" all leases and rents from the property, which right the lender then "licensed" back to CCC Atlantic so long as no Event of Default occurred. (*Id.,* Assignment of Leases and Rents, §§ 1.02, 1.04) But that license was expressly "revocable." (*Id.* § 1.02) The Assignment provides that upon an Event of Default, the license "terminate[s] automatically, and Lender shall be entitled to receive and collect the Rents as they become due and payable and exercise all of [CCC Atlantic's] rights ... under the Leases with respect to the Rents." (Id. § 1.04)

The importance of these contractual provisions cannot be underestimated because they set apart this commercial foreclosure case from the traditional scenario in which a receiver is sought at equity and no such contractual provisions exist. Thus, this case is qualitatively different from cases relied upon by CCC Atlantic which are stockholder suits seeking appointment of a receiver to manage a corporation. *See, e.g., Roach v. Margulies*, 42 N.J.Super. 243, 126 A.2d 45 (App.Div.1956).

This Court agrees that traditionally at equity appointment of a receiver to manage a corporation is a "drastic action [which should be] avoided where possible ... if the necessary relief can be accomplished by some less onerous expedient." *Roach*, 42 N.J.Super. at 245, 126 A.2d 45 (quoted at p. 13 of CCC Atlantic's opposition brief). But that general statement of the law simply does not apply to a case like this where the parties have agreed ex ante that, in the event of a default, the lender has the right to all rent payments and to the appointment of a

receiver. Under such circumstances, appointment of a receiver is not such a drastic remedy.[4]

In the case at bar, the first, and primary, consideration is the text of the mortgage contract itself. It is well settled that "when the language of a contract is unambiguous, we must interpret its meaning solely from the contents within its four corners, consistent with its plainly expressed intent."[5] The mortgage, which was purchased by Plaintiff, clearly permits receivership. It states, in relevant part:

> 2. Leases and Rents (a) [] Mortgagor hereby grants and assigns to Mortgagee the right, at its option, upon revocation of the license granted herein, to enter upon the Mortgaged Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation f such license may be applied toward payment of the Debt in such priority and proportions as Mortgagee in its sole discretion shall deem proper.
>
> *****
>
> 10. Remedies.
>
> (a) Upon the occurrence of any Event of Default, Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Mortgagor and in and to the Mortgaged Property, by Mortgagee itself or otherwise, including the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without imparting or otherwise affecting the other rights and remedies of Mortgagee:
>     i. declare the entire Debt to be immediately due and payable;

---

[4] *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604, 610–16 (D.N.J. 2012).
[5] *Seven Springs Farm, Inc. v. Croker*, 748 A.2d 740, 744 (Pa. Super. Ct. 2000), *aff'd*, 569 Pa. 202, 801 A.2d 1212 (2002) (internal citations omitted).

ii. institute a proceeding or proceedings, judicial or nonjudicial, to the extent permitted by law, by advertisement or otherwise, for the complete foreclosure of this Mortgage, in which case the Mortgaged Property may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

iii. with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, instate proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien of this Mortgage for the balance of the Debt not then due;

iv. sell for cash or upon credit the Mortgaged Property and all estate, claim, demand, right title and interest of the Mortgagor therein and rights of redemption thereof, pursuant to the power of sale, to the extent permitted by law, or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required by law;

v. institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein or in any other Loan Document;

vi. recover judgment on the Note either before, during or after any proceeding for the enforcement of this Mortgage;

vii. apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Mortgagor or of any Person liable for the payment of the Debt;

viii. enforce Mortgagee's interest in the Leases and Rents and enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys and dispossess Mortgagor and its agents and employees therefrom, and Mortgagee may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with the Mortgaged Property and conduct the business thereat; (B) complete any construction on the Mortgaged Property in such manner and form as Mortgagee deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property; (D) exercise

    all rights and powers of Mortgagor with respect to the Mortgaged Property, whether in the name of Mortgagor or otherwise, including the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive Rents; and €apply the receipts from the Mortgaged Property to the payment of the Debt, after deducting therefrom all expenses (including reasonable attorney's fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, insurance and other charges in connection with the Mortgaged Property, as well as just and reasonable compensation for the services of Mortgagee, and its counsel, agents and employees;
 ix. require Mortgagor to pay monthly in advance to Mortgagee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of any portion of the Mortgaged Property occupied by mortgagor, and require Mortgagor to vacate and surrender possession of the Mortgaged Property to Mortgagee or to such receiver, and, in default thereof, evict Mortgagor by summary proceedings or otherwise; or
 x. pursue such other rights and remedies as may be available at law or in equity or under the UCC< including the right to receive and/or establish a lock box for all Rents and proceeds from the Intangibles and any other receivable or rights to payments of Mortgagor relating to the Mortgaged Property.[6]

It is evident from the cited text that by the plain language of the mortgage contract, the parties have agreed to a receivership of the subject property, in accordance with the proposed Order submitted by MSCI. The "terms of a mortgage agreement are binding on the parties."[7] "Great as are the equity

---

[6] ECF No. 11-5 at 6-9.
[7] *Metro. Life Ins. Co. v. Liberty Ctr. Venture*, 650 A.2d 887, 891 (Pa. Super. Ct. 1994).

8

powers of the court, it is yet to be suggested that included in these powers is the power to nullify or impair a legal contract solemnly and intelligently entered into between competent parties."[8] "The importance of these contractual provisions cannot be underestimated because they set apart this commercial foreclosure case from the traditional scenario in which a receiver is sought at equity and no such contractual provisions exist."[9]

Another factor that favors appointment of a receiver here is Plaintiff's likelihood of success on the merits. MSCI is likely to succeed in the underlying foreclosure action, as Defendant did not dispute that it is in default, as noted previously.

Finally, "the financial position of the debtor"[10] is a relevant factor and has been implicitly admitted by Defendant in its brief. It wrote: "Defendant made diligent efforts to refinance the balance due and owing under the Loan Documents upon maturity, because of changes in the lending market, Defendant was unable to close on new financing prior to maturity."[11] Defendant has acknowledged that it is currently unable to pay the balance that matured approximately ten months ago.

---

[8] *Id.*
[9] *Wells Fargo Bank, N.A.*, 905 F. Supp. 2d at 615.
[10] *Manufacturers & Traders Trust Co. v. Minuteman Spill Response, Inc.*, 999 F. Supp. 2d 805, 825 (W.D. Pa. 2013).
[11] ECF No. 14 at 4.

Although Lewistown Shopping Plaza opposes the appointment, its arguments are unpersuasive. In other cases, courts have declined to appoint a receiver where receivership was not contemplated in the Loan Agreement itself;[12] where assets other than the mortgaged property were available for the lender to seize;[13] where genuine issues of material fact exist regarding the alleged default;[14] and where the borrower had been making some payments under the loan.[15] None of these arguments have been advanced here.

The Court holds that both the mortgage itself, and equity, support the grant of Plaintiff's motion for the appointment of a receiver.

## III. CONCLUSION

"Because a receiver "unquestionably interfere[s]" with an individual's right to otherwise control his or her property, a district court should appoint a receiver only "in cases of necessity, and when the plaintiff clearly and satisfactorily shows that an emergency exists and the receiver is needed to protect the property interests

---

[12] *U.S. Bank Nat. Ass'n v. Lighthouse Whitehall Commons, LLC*, No. 11-CV-05054, 2012 WL 4473232, at *13 (E.D. Pa. Sept. 28, 2012) (discussing a prior opinion denying appointment of a receiver).
[13] *Manufacturers & Traders Trust Co. v. Minuteman Spill Response, Inc*., 999 F. Supp. 2d 805, 816 (W.D. Pa. 2013).
[14] *Wells Fargo Bank, N.A. v. Premier Hotels Grp*., LLC, No. 3:14-CV-56, 2015 WL 404549, at *9 (M.D. Pa. Jan. 29, 2015) (Mariani, J.)
[15] *Comerica Bank v. State Petroleum Distributors, Inc.,* No. 3:08-CV-678, 2008 WL 2550553, at *5 (M.D. Pa. June 2, 2008) (Kosik, J.).

of the plaintiff."[16] As discussed above, I find that appointment of a receiver in this matter is appropriate.  In sum, the Defendant previously agreed by contract to the appointment of a receiver, the Defendant has admitted default on the mortgage, and the Defendant has admitted it has been unable to obtain financing to attempt to cure its default.    Plaintiff's Renewed Motion to Appoint a Receiver will be granted.  ECF No. 11.

    A separate Order appointing the receiver will issue.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[16] *Manufacturers & Traders Trust Co.,* 999 F. Supp. 2d at 816.